GRACEY, JUDGE:
Claimant Rosemary L. Woody brought this action as the Administratrix of the Estate of Yale Warren Woody, her son, who drowned in a single vehicle accident which occurred on March 14,1986, on West Virginia Local Service Route 7 near Sardis in Harrison County, West Virginia. Claimant alleges that respondent failed to provide adequate warning signs at the site of a one-lane bridge. Respondent also failed to replace a guardrail at the bridge site which had been knocked down two weeks prior to the incident. Claimant contends that respondent had actual or constructive notice of this guardrail condition and was negligent in failing to make repairs. For these reasons, claimant contends respondent is liable for the death of Yale Warren Woody.
Respondent contends that it did not have notice, either actual or constructive, of the fact that the guardrail was not in place. Respondent also contends that the decedent was the victim of a game being played by other teenagers at the scene.
The facts of this claim as developed in the evidence are as follows: On the evening of March 14, 1986, Yale Warren Woody, age 17 and a junior at Liberty High School, had been at a basketball game. He returned home to borrow his mother's automobile to go out with some friends. He went to a MacDonald's restaurant in Clarksburg to see if some of his friends were there after the game. Typically, the high school students met there, there he met a friend, Michael R. Johnson, whom he invited to go with him to a party. They proceeded to Kroger's parking lot to get Michael's automobile. Another friend, Mark Clutter, met them at the lot and told them the party was at a house in Sardis and he offered to lead them there as neither Yale nor Michael were familiar with Sardis area. Before leaving for the party, Mark Clutter picked up Darren Oldaker, who was riding with Mark Clutter to the party. As the three vehicles proceeded to Local Service Route 7, Mark Clutter and Darren Oldaker were in the lead in their vehicle. Behind them was Yale Warren Woody in his vehicle, and behind Yale was Michael R. Johnson in his vehicle. It was dark and raining. The Clutter vehicle suddenly disappeared from the view of the driver, Michael R. Johnson. He stated, "And then all of a sudden, that Mark Clutter — and Darren was with him — they took off from us. And so we just kept following the road, because *30 we thought maybe they'd be up ahead, waiting for us." He then described what he observed at the time of the accident. He stated, "And on the way there, we come — we come down — like coming off of a hill, and there was like a turn in it. And when we come out of the turn, we come to the bridge. There was no markings or nothing, so we didn't know which way to go to meet them. And so he hit his brakes — Yale hit his brakes, and slid over the bank. And I seen him stopping. I was right behind him. So I swerved around him, to keep from hitting him, and hit the bridge."
Michael R. Johnson indicated he was driving at approximately 35 miles per hour. He estimated Yale's vehicular speed at 30 miles per hour. He called the emergency telephone number from a house near the bridge. When he returned to the bridge, he was unable to observe the Woody vehicle. At that time Mark Clutter and Warren Oldaker arrived at the bridge site. Michael Johnson stated that the two boys were laughing; that they had tried "to get us lost." They had apparently hidden back up the road at a school and watched the two vehicles approach the bridge anticipating that one of the boys may have trouble going over the bridge. Michael R. Johnson estimated the time of the accident at approximately 10:55 p.m.
Mr. Johnson described the surrounding area at the bridge. He explained that there were no signs or markings on the road "saying bridge or anything." There were no arrow signs or reflectors on the bridge. He further stated that when the vehicles came down the hill toward the bridge, it is "kind of like a right angle — not real sharp. But when you come into it, if you never have been there before, you don't know which way you're going. You have to kind of look at it for a minute or so, or a few seconds. And we didn't know where he was going. But it just come up on us real quick, as we come out of the turn and down around the hill."
The Woody vehicle was located in the Tenmile Creek on the following day. Yale Warren Woody had drowned in the creek when his vehicle missed the curve over the Sardis bridge and went off the road into the creek.
Testimony from neighbors who lived near the Sardis Bridge established that the guardrail, on the left side of the Sardis Bridge in the direction from which the Woody vehicle approached the bridge, had been knocked down when Vernon "Bud" Clutter had gone over the guardrail while driving his 1978 Fork Bronco at a speed too great for the curve to the bridge on February 28, 1986. Mr. Clutter did not notify respondent of his accident. However, Joan LaVaughn Kendall testified that she had called respondent's Gore, West Virginia, office to report that the guardrail was down a "couple" days after the Clutter vehicle went over the guardrail and into the creek. She also stated that there were no signs on the bridge.
Testimony also established that respondent inspects bridges on a two-year cycle. The Sardis bridge had been inspected in 1983 and in 1985. The inspector noted in his report in 1983 that this bridge "should have warning paddles." The 1985 report noted that there were sightly faded, one-lane bridge warning signs located near each end of the bridge and that "Installation of hazard warning paddles is considered optional." The only cure for alignment is *31 construction of a new bridge.
After reviewing the record in this claim, the Court is of the opinion that respondent was negligent in failing to maintain the guardrail. The placement of warning paddles on the bridge certainly would have assisted the traveling public on this road. The placement of signs is discretionary with respondent. The maintenance of the guardrail was a duty of the respondent. The respondent failed to protect the traveling public when it failed to replace the missing guardrail at the Sardis bridge in a timely manner.
The Court is also of the opinion that Yale Warren Woody was negligent in the operation of his vehicle for the conditions then and there existing on the evening of March 14, 1986. It was dark and raining. He was unfamiliar with the road. His failure to maintain control of the vehicle which he was driving was a factor which the Court cannot overlook in its consideration of all of the factors which contributed to the cause of this tragic accident. A reasonable prudent person operating a vehicle on a narrow, curvy road is aware of the necessity to drive in accordance with the conditions then and there existing, regardless of the posted speed limit. It is the opinion of the Court that Yale Warren Woody was not operating his vehicle in a prudent and safe manner for the conditions present on this particular night.
In accordance with the above, the Court is of the opinion that under the doctrine of comparative negligence both the respondent and the decedent were equally negligent. Therefore, the Court is of the opinion to and does disallow this claim.
Claim is disallowed.